ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| QUALITY DETAILS INVESTMENT, LLC<br><br>Recurrente<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE SAN JUAN<br><br>Recurrido | TA2026RA00002 | *Recurso de Revisión* procedente de la Oficina de Gerencia de Permisos del Municipio Autónomo de San Juan<br><br>Caso Núm.: 2025-622686-PU-396828<br><br>Sobre: Permiso Único Vía Variación |

Panel integrado por su presidenta la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 16 de marzo de 2026.

Comparece ante nos Quality Details Invesment, LLC (en adelante el "Recurrente" o "QDI") mediante un Recurso de Revisión Judicial instado el 7 de enero de 2026. En su recurso, nos solicita que revoquemos la Resolución emitida por la Oficina de Gerencia de Permisos del Municipio Autónomo de San Juan (en adelante, el "Recurrido" o el "Municipio") y se conceda la variación de uso solicitada por QDI para el proyecto de Santurtzi Complex.

Por los fundamentos que expondremos a continuación, se confirma la Resolución de la Oficina de Gerencia de Permisos del Municipio Autónomo de San Juan. Exponemos el trasfondo factico y procesal que acompaña la presente controversia.

## I.

El 15 de noviembre de 2024, el Recurrente solicitó ante el Municipio de San Juan un permiso de Hospedería para un inmueble localizado en la siguiente dirección, 2059 Av. I, Esq

Nueva San Juan, P.R. 00915. El inmueble cuenta con un (1) espacio,[1] de estacionamiento, un máximo de dieciocho (18) huéspedes y un total de seis (6) habitaciones. [2] El nombre del proyecto es Santurzi Complex.

El 17 de marzo de 2025, el Municipio otorgó una licencia provisional vigente hasta el 31 de mayo de 2026 para alquiler a corto plazo mediante el certificado número 511.[3] Asimismo, se expuso que la licencia está sujeta a que se obtuviera el Permiso Único correspondiente.[4]

El 3 de abril de 2025, la Oficina de Permisos del Municipio le notificó una carta al Recurrente en la que señaló que:

> El uso solicitado de Facilitad turística ubica en un distrito con calificación de Zonas de Uso Residencial Uno (ZU-RI),[5] según la sección 6.18 la Tabla de Usos, este uso no está permito [sic] ministerialmente, no obstante, su caso será evaluado Vía Excepción, Capitulo 33 o Variación, Capítulo 34, según el Reglamento de Zonificación Especial de Santurce en adelante RZES, con vigencia de 17 de mayo de 2003, no obstante, la parte procesar, [sic] se utilizará el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios con [sic] en adelante, RC, vigencia de 16 de junio de 2003[.] (Negrillas omitidas).[6]

El 15 de mayo de 2025, la Compañía de Turismo del Gobierno de Puerto Rico recomendó favorablemente que el inmueble se lleve a cabo como un alojamiento suplementario sujeto a que cumpla los siguientes requisitos:

> [1]Cumplirá con los requisitos del Reglamento de Hospederías de Puerto Rico, bajo la modalidad de alojamiento suplementario a corto plazo;

---

[1] Existe una incongruencia en torno al número de estacionamiento en la Solicitud de Permiso Único vía variación el número de estacionamientos dice dos (2) *versus* el Memorial explicativo que dice uno (1).

[2] Véase expediente del Recurso de Revisión judicial en la pág. 4.

[3] *Íd.*, pág. 14.

[4] *Íd.*

[5] La Zona de Uso Residencial Uno (ZU-R1) son para áreas que son principalmente residenciales, cuya formación histórica no ha permitidos numerosas desviaciones al uso residencial. Reglamento de Zonificación Especial de Santurce, Reglamento Núm. 6664, Departamento de Estado, 16 de julio de 2003, pág. 82.

[6] Véase expediente del Recurso de Revisión judicial en la pág. 15.

[2]No podrá contar, ni alquilar, más de seis (6) unidades de forma independiente, según Capitulo 8 Articulo 1, del Reglamento de Hospederías de Puerto Rico;

[3]Cumplirá con el debido registro y pago correspondientes a la División de "Room Tax" de la Compañía, en un periodo no más tarde de 30 días después de una vez emitido el permiso de uso (y)(o) antes de recibir el primer huésped;

*[4]Deberá proveer de [sic] los espacios de estacionamientos funcionales necesarios de forma tal que no afecte el acceso y tránsito de los residentes de la comunidad*;

[5]Cualquier otro requerimiento de la Compañía.[7] (Énfasis suplido).

Por último, expuso que, de incumplir con uno de los antes mencionados requisitos, el endoso sería retirado.[8]

El 7 de octubre de 2025, se llevó a cabo la vista pública correspondiente según establecen diferentes estatutos y reglamentos del gobierno.[9] En esa vista se discutió la solicitud de permiso único vía excepción y/o variación en uso para alojamiento a corto plazo.[10]

El 24 de noviembre de 2025, mediante una Hoja de Planteamientos la Oficina de Permisos del Municipio *no recomendó* el uso propuesto del inmueble. (Énfasis suplido). Como parte de los comentarios generales se señaló que:

Este caso fue evaluado mediante consulta de construcción 2023 – 476920 – cco – 011950 el cual fue a comité para ser referido a vista pública; pero el caso se archivó por inacción del proponente al caso. Se observó en la foto de inspección la remodelación de la estructura, construcción de verja, construcción del tercer nivel de piso, para "roof top". El proyecto posteriormente fue presentado mediante 2024 – 533999 – PCE – 300189 se expide obra [inintendible] a permiso de construcción: pintura, instalar ventana, resanar paredes, reemplazo de accesorios de baño y montura de losa (2 feb 2024). Luego mediante caso 2024-533999-P05-301971 se autoriza vivienda dos niveles (multifamiliar) – 10 abril 2024. Las fotos de este expediente: ilustra una propiedad en estado original la cual fue alterada donde se observa que se [inintendible] el área de ocupación eliminando el

---

[7] *Id*., pág. 26-27.
[8] *Íd*.
[9] *Íd*., 61.
[10] *Íd.*

balcón, que ahora es parte de la estructura. El caso en [sic] epígrafe fue a vista pública. El proyecto no cuenta con estacionamiento, no cuenta con permiso de construcción para las ampliaciones y mejoras existentes, tampoco cuenta con la legalización en la alza de la verja en patio delanteros se solicita legalizar variaciones. Archivo del caso en epígrafe.[11]

El 5 de diciembre de 2025 y notificado el 8 de diciembre de 2025, el Municipio emitió una Resolución denegando el permiso único. [12] En su escrito establecieron que "[u]n análisis del expediente nos lleva a concluir que la presente solicitud cumple con los requisitos y reglamentaciones para una variación en su uso; *sin embargo, nos preocupa la falta de estacionamiento y las exigencias de la Compañía de Turismo*".[13] (Énfasis suplido). Además, el Municipio concluyó que:

> Tomando en cuenta la información provista por las partes que obra como parte del expediente, sobre todo, de los vecinos residentes del lugar, particularmente sobre: ausencia de beneficio que se derivaría una vez adoptada la propiedad para el uso solicitado; que la propiedad sin una variación puede continuar utilizándose; la falta de infraestructura para fines de estacionamiento o aceras para aparcar vehículos sin interferir con el libre tránsito; el ambiente residencial de la calle y la seguridad y tranquilidad de los vecinos, concluimos que, en relación a la presente solicitud, la misma **NO cumple** con los requisitos establecidos en el Reglamento Conjunto de Permisos y el Reglamento de Zonificación Especial de Santurce.
>
> Recomendamos la ***NO aprobación*** del Permiso Único vía Variación en Uso **2024-601862-PU- 368538**.[14]

Inconforme con esta determinación, el 7 de enero de 2026, el Recurrente presentó el siguiente señalamiento de error ante este honorable foro:

> ÚNICO ERROR: Erro [sic] la Oficina de Permisos del Municipio Autónomo de San Juan al denegar la solicitud de Permiso Único Nuevo Completo para Alojamiento Suplementario de Corto Plazo solicitado por QDI, ya que el proyecto de Santurtzi Complex

---

[11] Véase Ent. Sum. TA. Núm. 9. Apéndice 2. pág. 10.
[12] *Íd*., 69.
[13] *Íd*., 73.
[14] Véase Ent. Sum. TA. Núm. 9. Apéndice 1. pág. 5.

cumple con y promueve la política pública establecida en la Ley Núm. 148 de 1988 conocida como la Ley Especial para la Rehabilitación de Santurce. (Negrillas omitidas).

## II.

## A. Planificación territorial y variación.

La Asamblea Legislativa de Puerto Rico creó la Ley Núm. 148 de 4 de agosto de 1988, conocida como la Ley Especial para la Rehabilitación de Santurce. Este estatuto tiene como fin fomentar la rehabilitación del barrio de Santurce y ordenarle a la Junta de Planificación a crear y/o revisar la zonificación correspondiente dentro de sus límites territoriales. El Art. 12 de la Ley Núm. 148 de 4 de agosto de 1988 autoriza a la Junta de Planificación a aprobar los reglamentos para cumplir con las disposiciones del estatuto. 23 LPRA sec. 2261.

Mediante esta encomienda la Junta de Planificación creó el Reglamento de Zonificación Especial de Santurce, Reglamento Núm. 4982, el cual entró en vigor el 14 de enero de 1993. Posteriormente, este fue enmendado en el 2003 por el Reglamento Núm. 6664. El Reglamento define el "uso" como "propósito para el cual la estructura o edificio fue diseñado, es usado o pretende usar". Reglamento de Zonificación Especial de Santurce, Reglamento Núm. 6664, Departamento de Estado, 16 de julio de 2003, pág. 50.

El inmueble también puede tener una variación, por el cual, el uso pensado primordialmente puede tener una excepción. Asimismo, el Reglamento de Zonificación Especial de Santurce, *supra,* pág. 50 establece que la variación en uso se refiere a:

> [T]oda autorización para utilizar una propiedad para un uso no permitido por las restricciones impuestas a una zona o distrito y que se concede para evitar prejuicios a una propiedad donde, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de

la propiedad; que se concede por la necesidad reconocida o apremiante de algún uso por una comunidad debido a las circunstancias particulares de dicha comunidad que no puede ser satisfecha si no concede dicha variación; o que se concede para satisfacer una necesidad pública de carácter inaplazable.

El Tribunal Supremo ha expuesto que las variaciones son una válvula de escape dentro del riguroso sistema de zonificación en Puerto Rico. *Empresas Ferrer v. ARPe*, 172 DPR 254, 267 (2007). Las variaciones no son la regla general, sino que es un mecanismo de *excepción*, que será concedida solo en casos extraordinarios y meritorios condicionado a lo que establezca la ley. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 84 (1999). (Énfasis suplido).

Nuestro máximo foro esbozó que "la variación (concesión) aliviará un perjuicio claramente demostrable… [o que la misma habrá de redundar] en los mejores intereses de la comunidad [ y el sector]". *Empresas Ferrer v. ARPe, supra,* pág. 269*.

El capítulo 33 del Reglamento de Zonificación Especial de Santurce, *supra* establece que la Junta de Planificación podrá establecer vía excepción solicitudes de permisos entorno a usos y construcciones. En específico la sección 33.5.8 del Reglamento de Zonificación Especial de Santurce, *supra,* pág.  257-258*,* establece que se podrá considerar vía excepción el uso de una Hospedería u hospedaje,[15] (ZU- R1 y ZU- R2) en zona de uso residencial y zona de uso general uno (ZU – G1) si se cumple con los siguientes criterios:

a. *El dueño o administrador de la hospedería u hospedaje reside en la vivienda que forma parte ésta.*
b. No se darán características comerciales a la estructura.
c. El permiso que se expida para este propósito contendrá las condiciones que la Administración

---

[15] Según el Reglamento de Zonificación Especial de Santurce, *supra*, pág. 26 una hospedería se define como "facilidad de alojamiento por periodos de tiempo relativamente cortos".

entienda sean necesarias para proteger la salud y bienestar general del vecindario.

d. El tamaño mínimo de área de solar a requerirse se determina de acuerdo con lo siguiente:

[…]

e. Se celebrará vista pública previo a la autorización de una hospedería o un hospedaje.

f. Las hospederías podrán servir, de autorizarse, comida y bebidas alcohólicas solamente a huéspedes e invitados, sujeto a las condiciones y limitaciones siguientes:

[…]

(Énfasis suplido).

### B. Espacios de Estacionamiento de Vehículos.

El Reglamento de Zonificación Especial de Santurce, *supra,* pág. *179,* en su capítulo 21 rige lo relacionado a los estacionamientos y accesos vehiculares.  En su sección 21. 3 en lo que respecta a los estacionamientos para estructuras existentes se dispone que:

1. Cualquier estructura existente a la fecha de vigencia de este Reglamento podrá cambiar su uso, rehabilitarse, remodelarse, ampliarse de forma muy limitada o alterarse sin proveer espacio de estacionamiento adicional al que ya provea cuando se reúnan las siguientes dos condiciones:

a. Si se utiliza para un tipo de uso no residencial similar o menos intenso o para un número de unidades o menor para la cual fue originalmente diseñada la estructura o para la cual se tiene un permiso de uso permanente.

b. Si la estructura no aumenta su área bruta de construcción en más de un cinco por ciento (5%).

Ahora bien, la sección 21.7 del Reglamento de Zonificación Especial de Santurce, *supra, pág. 196* establece la provisión de espacios de estacionamientos de vehículos. *Se desprende de la sección 21.7.17 que los inmuebles que sean hospederías deben tener un (1) estacionamiento para el dueño de la vivienda o el administrador y un (1) espacio por cada tres (3) habitaciones.* (Énfasis suplido).

### C. Doctrina del autoinflicción del daño

La doctrina de autoinflicción de daños adoptada jurisprudencialmente por el Tribunal Supremo en el caso de *Asoc.,*

*C.D. Octubre v. J.A.C.L.*, 116 DPR 326, 334 (1985) expone que el tribunal puede "invalidar la concesión de variaciones a los requisitos    reglamentarios de zonificación justificadas por condiciones creadas por el propio proponente de la variación y que impiden el uso pretendido de la propiedad para el que se solicita". *Empresas Ferrer v. ARPE, supra,* pág. 271.

Según la doctrina de autoinflicción de daños el que solicita la variación adquiere el inmueble con conocimiento de las limitaciones sobre su uso. *ARPE v. J.C.A.L.*, 124 DPR 858, 866 (1989). Se presume que en esos escenarios el solicitante adquiere el inmueble a un precio que tomó en consideración la limitación y con el fin de utilizarla para un uso no previsto en la zonificación. *Íd.*

Esta doctrina es aplicable a cualquier solicitante con independencia de si tiene conocimiento de la limitación y si esta es real o constructiva. *Íd*. "Aunque este tipo de propietario no está absolutamente impedido de reclamar sus derechos constitucionales sobre la propiedad, su conocimiento previo sobre las limitaciones impuestas por la zonificación debilita las posibilidades de éxito en los tribunales. *Empresas Ferrer v. ARPE, supra,* pág. 272; *ARPE v. JCAL*, *supra*, pág. 866.

### III.

El 15 de noviembre de 2024, el Recurrente solicitó ante el Municipio un permiso de Hospedería en una zona ZU-RI de carácter residencial.  El 3 de abril de 2025, la Oficina de Permisos del Municipio mediante una carta le informó que el uso solicitado no está permitido en la zona y que se estará evaluando su solicitud vía excepción según lo establecido en el capítulo treinta y tres (33) que rige las excepciones o el capítulo treinta y cuatro (34) que

regula las variaciones según dispone el Reglamento de Zonificación Especial de Santurce, *supra*.

El 15 de mayo de 2025, la Compañía de Turismo del Gobierno de Puerto Rico hizo una recomendación favorable para que el inmueble sea considerado como un alojamiento suplementario. No obstante, dicha recomendación estaba sujeta a cinco (5) requisitos. Uno de ellos, en específico el cuarto (4) requisito giraba en torno a que se tenía que cumplir con los espacios de estacionamientos funcionales de forma tal que no se afecte el acceso y el tránsito de los residentes de la comunidad.

Por otro lado, el 24 de noviembre de 2025, la Oficina de Permiso del Municipio no recomendó el uso propuesto del inmueble. En sus comentarios resaltaron también que el proyecto no cuenta con estacionamientos suficientes.

Según surge del escrito titulado Memorial Explicativo justificando variación o excepción sometido por el Recurrente Santurzi Complex solamente cuenta con la cantidad de un (1) estacionamiento al interior del solar con una medida de 9 x 16. Además, el complejo cuenta con una cantidad máxima de seis (6) habitaciones.

A nuestro entender, el Recurrente incumple con varias disposiciones del Reglamento de Zonificación Especial de Santurce, *supra*. La sección 21.7.17 del Reglamento de Zonificación Especial de Santurce, *supra*, pág. 196 establece que las hospederías deben tener "[u]n (1) espacio para la vivienda del dueño o administrador, más un (1) espacio adicional por cada tres (3) habitaciones". Por lo tanto, al Santurzi Complex tener una cantidad de seis (6) habitaciones debería tener dos (2) espacios de estacionamientos para los habitantes más uno (1) para el

administrador. El Recurrente incumple con este requisito del Reglamento.

En lo que respecta a las excepciones que establece el Capítulo treinta y tres (33) para que se pueda considerar el uso de una Hospedería en una zona de uso residencial ZU-R1 el Reglamento de Zonificación Especial de Santurce, *supra*, pág 256. en su inciso 33. 5 (8) establece y citamos textualmente "Hospedería u Hospedaje en zonas de uso residencial (ZU-R1 y ZU-R2) y en zona de uso general (ZU-G1) de acuerdo con lo siguiente: (a) El dueño o administrador de la hospedería y hospedaje reside en la vivienda que forma parte de esta". Sin embargo, mediante su Memorial Explicativo Post Vista el Recurrente menciona que "[e]n la propiedad no residirá ningún propietario, ya que todas las unidades están destinadas exclusivamente a hospedería a corto y mediano plazo". Por lo tanto, el Recurrente nuevamente incumple con el Reglamento.

Por último, la variación de uso según dispone la jurisprudencia es una de carácter excepcional. El Recurrente no nos pone en posición de como conceder la variación de uso, esto redundaría en los mejores intereses de la comunidad. De conceder esta, solo redundaría en un beneficio de sus propios intereses. El Recurrente tenía que saber que la zonificación es una de uso residencial y que su intento de variar la zonificación era por motivos de condiciones creadas por el mismo.

## IV.

Por los fundamentos antes expuestos, se confirma la Resolución de la Oficina de Permisos del Municipio de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones